**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4468
_____


IMAN SHARIF,

Appellant

v.

C.O. NATHAN PICONE; C.O. BRIAN POTANCE;
C.O. THOMAS PINTO; LIEUTENANT JOSEPH
KOSPIAH;
JOHN DOE C.O. NOS 1-10

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 5-09-cv-02501)
District Judge:  Honorable Robert F. Kelly

_____

Argued October 18, 2013

Before:  RENDELL, JORDAN and LIPEZ*, <u>Circuit Judges</u>

(Opinion Filed: January 21, 2014)

Stephen D. Brown, Esquire
Donald C. Le Gower, Esquire **(Argued)**
Dechert, LLP
Cira Centre
2929 Arch Street
Philadelphia, PA   19104-2808

Counsel for Appellant

David J. MacMain, Esquire  **(Argued)**
Brian H. Leinhauser, Esquire
The MacMain Law Group
101 Lindenwood Drive
Suite 160
Malvern, PA   19355

Counsel for Appellees

*Honorable Kermit V. Lipez, Senior United States Circuit Judge for the Court of Appeals for the First Circuit, sitting by designation.

# OPINION

**RENDELL**, <u>Circuit Judge</u>:

Plaintiff, Iman Sharif, appeals from a jury verdict in favor of Defendants - several Northampton County Prison officers - on Sharif's 42 U.S.C. § 1983 excessive force claim. On appeal, Sharif argues that the District Court erred in admitting evidence of Sharif's prior plea of nolo contendere and resulting conviction for assault in connection with the incident that is at the heart of his § 1983 claim. He notes that Federal Rule of Evidence 410 prohibits the admission of his nolo plea. He also urges that the Court abused its discretion under Federal Rule of Evidence 609 in admitting evidence of the conviction as relevant to his credibility.

## I.

### A. *Factual Background*

On March 11, 2009, Iman Sharif was an inmate at the Northampton County Prison. He was housed in the Restrictive Housing Unit ("RHU") where Defendant-Appellees Corrections Officers Nathan Picone ("C.O. Picone"), Thomas Pinto ("C.O. Pinto"), and Brian Potance ("C.O. Potance") were all on duty. While C.O. Picone was collecting dinner trays, he claims that Sharif "sucker punched" him. (J.A. 369.) In contrast, Sharif claims that C.O. Picone initiated the altercation by punching Sharif first.

C.O. Picone testified that once he was struck, he attempted to protect himself from additional punches and

kicks. He further testified that C.O. Potance, who was assigned to help C.O. Picone retrieve dinner trays, entered Sharif's cell and attempted to restrain Sharif. At this point, C.O. Picone hit Sharif in the head with an open hand in an effort to "get him to the ground." (J.A. 371.) Conversely, Sharif asserted that once C.O. Picone began to hit him, C.O. Potance and C.O. Pinto entered his cell and joined in the attack by choking him.

Following the altercation, Sharif was handcuffed and moved to a "suicide cell." (J.A. 446.) According to Appellees, this was for his own safety; however, he continued to cause commotion so he was moved to a restraint chair. Sharif contends that while he was in the restraint chair, he was punched repeatedly by unnamed corrections officers, all of which was observed and permitted by Appellee-Defendant Lieutenant Joseph Kospiah ("Lt. Kospiah").

Sharif was charged with aggravated assault pursuant to 18 Pa. Cons. Stat. § 2702(a)(3) (2012) as a result of the altercation with C.O. Picone, C.O. Potance and C.O. Pinto. Sharif entered a plea of nolo contendere and was convicted under the statute as charged.[1] Sharif's excessive force claim under 42 U.S.C. § 1983 is based on this incident.

### B. *Procedural History*

---

[1] 18 Pa. Cons. Stat. § 2702(a)(3) reads, "(a) Offense defined. – A person is guilty of aggravated assault if he . . . (3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees, or other persons enumerated in subsection (c), in the performance of duty." Subsection (c) includes corrections officers.

4

Sharif brought this § 1983 action alleging that C.O. Picone, C.O. Potance and C.O. Pinto are liable for attacking him in his cell in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Further, he contends that Lt. Kospiah is liable for allowing the physical abuse to proceed while Sharif was restrained. Sharif sought relief of "nominal, compensatory, and punitive damages" for Appellees' actions against him. (J.A. 20.)

Pre-trial, Sharif filed a motion in limine to exclude evidence of his nolo contendere plea under Rule 410. The Court noted that Sharif planned to take the stand and deny any wrongdoing in connection with the altercation. The Court stated that if that were to happen, then evidence of his plea "may end up being relevant" and would thus be admitted. (J.A. 123-24.) During a hearing on the motion, the Court accepted Appellees' counsel's argument that "it would be inconsistent to allow [Sharif] to have taken the position in a prior court proceeding that he wasn't going to contest the charges." (J.A. 123.) In other words, the plea would be admitted as inconsistent with his assertion at trial that he had done nothing wrong and, therefore, as relevant to the issue of his credibility.

Pursuant to the Court's ruling, during cross-examination of Sharif, Appellees' counsel twice referred to Sharif's plea of nolo contendere to suggest that the plea was inconsistent with his statement at trial that he had done nothing wrong. We quote directly from the trial transcript:

Q: You stand before this jury and you have testified that you did absolutely nothing wrong, correct?
A: Yes, sir.

5

Q: The officers just came in and struck you for no reason?
A: Yes, sir.
Q: Yet, in another court at another time you had an opportunity to say the same thing, correct?
A: No, sir.
Q: You were criminally charged with assaulting Officer Picone, correct?
A: Yes, sir.
Q: And you didn't contest those charges?
A: No, sir.
Q: You pled no contest?
A: Yes, sir.

(J.A. 216-17.)

Q: Sure. Now, I want to get back to the first incident. It's your testimony as to the first part, the incident with Picone, that he came in, struck you, you had absolutely done nothing wrong, correct?
A: Wrong morally, like I did, I tried to get under his skin, I did talk about him.
Q: Right, but you did nothing physical?
A: Exactly.
Q: You did not strike him first?
A: Exactly.
Q: Okay. But, that's what you were charged with, correct, striking him first, that's what you were criminally charged with?
A: That's what -- [Objection]

…

6

> Q: Sure. You were charged with striking Officer Picone, correct?
> A: I was charged with assaulting him, yes.
> Q: Assaulting him. Okay. But, your testimony here today is you did not assault him in any way, shape, or form?
> A: And that's [Objection regarding the definition of assault under this statute, *i.e.,* assault of an employee of the state]
> …
> A: You asked me if I assaulted him?
> Q: Correct.
> A: The same thing that I said before, I did not hit Officer Picone.
> Q: But, you did not contest in the criminal case that you assaulted him, correct?

(J.A. 241 - 44.)

In his closing, counsel again referenced Sharif's nolo plea, stating:

> He says he didn't do a darn thing that day…yet when he had an opportunity in another court proceeding to contest that he didn't do what he was accused of doing, he didn't contest it…yet he comes in here in another court proceeding and takes a different position. That should speak volumes about his credibility.

(J.A. at 577.)

7

During trial, the District Court allowed Appellees to introduce evidence of Sharif's five prior convictions, including the conviction for assault resulting from his nolo plea, pursuant to the Court's denial of Sharif's motion in limine in which Sharif urged that the minimal probative value of these convictions was outweighed by their prejudicial effect. The other convictions were for simple assault and for false reporting to a police officer. The convictions were all admitted for the purpose of assessing Sharif's character for truthfulness.

The Court instructed the jury as to the purpose for which past convictions were admitted into evidence: "You may wish to consider those convictions as you weigh his credibility as a witness." (J.A. 605.) The Court explained that one of the convictions was the result of a nolo contendere plea which, according to the Court, could be used only to evaluate Sharif's credibility. (J.A. 605-06; 222-23 ("[T]hose incidents of prior convictions are admitted for the sole purpose for you[, the jury,] to use if you so desire to consider the credibility of the witness.")). The jury returned a verdict against Sharif, and this timely appeal followed.

## II. *Jurisdiction and Standard of Review*

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over Sharif's appeal pursuant to 28 U.S.C. § 1291.

8

A district court's interpretation of the Federal Rules of Evidence is reviewed de novo. *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989). The application of a particular rule by a district court is reviewed under an abuse of discretion standard. *United States v. Balter*, 91 F.3d 427, 437 (3d Cir. 1996).

## III.

### A. *Rule 410: Admissibility of the Nolo Contendere Plea*

Sharif urges that the District Court erred in allowing evidence of his plea of nolo contendere to be admitted because Rule 410 bars such admission. Rule 410 states, in relevant part, "[i]n a civil or criminal case, evidence of [a nolo contendere plea] is not admissible against the defendant who made the plea." Fed. R. Evid. 410(a)(2); *see also* Fed. R. Crim. P. 11(f) ("The admissibility or inadmissibility of a plea . . . is governed by Federal Rule of Evidence 410."); Fed. R. Evid. 803(22) (plea of nolo contendere excluded from exceptions to hearsay rule). This prohibition is based on the fact that "a nolo plea is not a factual admission that the pleader committed a crime. Rather, it is a statement of unwillingness to contest the government's charges and an acceptance of the punishment that would be meted out to a guilty person." *Olsen v. Correiro*, 189 F.3d 52, 59 (1st Cir. 1999); *see also North Carolina v. Alford*, 400 U.S. 25, 35 n.8 (1970) ("Throughout its history…the plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency."). An important policy consideration animating Rule 410 is that it encourages

compromise in criminal cases, which, in turn, lessens the burden on courts, defendants and prosecutors, producing a more efficient criminal justice system. *See Olsen*, at 60 ("A second reason behind Rule 410's exclusion of nolo pleas is a desire to encourage compromise resolution of criminal cases."); *see also* 21 Am. Jur. 2d Criminal Law § 675 (2013) ("A plea of nolo contendere is used by the accused in criminal cases to save face and avoid exacting an admission that could be used as an admission in other potential litigation, to avoid trial with its attendant expense and adverse publicity in the event of a conviction."). Thus, the use of a nolo plea as tantamount to an admission of guilt would defeat one of its primary purposes.

Despite Rule 410's apparent clear command, there is caselaw supporting the admission of a defendant's nolo plea in certain circumstances. [2] In *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988), two African-American men were threatened and harassed by a mob of several hundred white high school students in a McDonald's parking lot. *Id.* at 139. As they attempted to flee the parking lot, they were arrested for disorderly conduct and reckless driving. *Id.* at 140. After pleading no contest to these charges, the defendants sued the arresting police officers for false arrest and wrongful imprisonment. *Id.* The police officers asserted a qualified immunity defense. To determine whether they were entitled to this defense, the court examined whether the officers had violated the plaintiffs' clearly established rights. *Id.* at 141.

---

[2] We note that, at oral argument, Appellees urged the applicability of caselaw allowing the admission of such a plea, but they failed to even mention Rule 410, or the relevant caselaw, in their brief.

The court found that the plaintiffs were "estopped" from arguing that their rights had been violated because, by pleading nolo contendere, they had "in effect, admitted facts in open court evidencing [their] guilt." *Id*. at 141-42.

The *Walker* court went beyond the issue of collateral estoppel when it stated that its decision was not barred by Rule 410:

> Rule 410 was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil liability. We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability on the part of the arresting police.

*Id*. at 143.

This language has been cited by district courts within our Circuit, as well as by the Tenth Circuit, for the proposition that nolo contendere pleas are not always precluded by Rule 410, particularly when a pleader attempts to bring a § 1983 claim against officials for false arrest, false imprisonment or malicious prosecution.[3] *See Rose v. Uniroyal Goodrich Tire*

---

[3] The underlying principle is that courts will not allow someone who has consented to be convicted, and therefore punished, pursuant to a nolo plea to claim that he was wrongfully arrested, wrongfully imprisoned or prosecuted maliciously, because the conviction that results from a nolo plea validates the government action.

*Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000) (reasoning that the nolo contendere plea was "not being admitted 'against the defendant'" in the civil action); [4] *Douglas v. Public Safety Comm'n*, 1:01cv00419, 2002 WL 31050863, at *8 (D. Del. Sept. 13, 2002) (finding *Walker* to be "instructive and persuasive"); *Domitrovich v. Monaca*, 2:08cv1094, 2010 WL 3489137, at *6 (W.D. Pa. Sept. 1, 2010) (relying on *Walker* to hold that prior nolo plea barred claims for malicious prosecution and false arrest).

We view *Walker* as imprecise, and in any event, distinguishable. First, *Walker's* reference to a defendant "having admitted facts" through a nolo plea, 854 F.2d at 143, misconstrues the nature of the plea. Indeed, we held in *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004), that a nolo plea is not an admission. *See also United States v. Poellnitz,* 372 F.3d 562, 566 (3d Cir. 2004) ("While a nolo plea is indisputably tantamount to a conviction, it is not

---

[4] In *Rose* the court allowed a plea of nolo contendere to be admitted in the narrow circumstance where a plaintiff was fired under the company's no tolerance drug policy based on the plaintiff's plea of nolo contendere to a drug possession charge. *Rose*, 219 F.3d at 1219. The plaintiff asserted wrongful discharge and argued that his plea of nolo contendere was inadmissible under Rule 410. *Id.* The court ultimately held that Rule 410 could not be construed "to affirmatively prevent an employer from presenting the very evidence used as a basis for its termination decision." *Id.* at 1220. Even though the court in *Rose* allowed the nolo plea to be admitted, it nonetheless noted that, "although a plea of nolo contendere has the same *legal* effect as a guilty plea, it is not a *factual* admission to the underlying crime." *Id.* (emphasis in original).

12

necessarily tantamount to an admission of factual guilt."). Second, the logic of *Walker* seems to flow from the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), where the Court held that when a § 1983 claim amounts to a collateral attack on a criminal conviction, the conviction or sentence must be reversed, or invalidated by other means, before a court can entertain the claim.[5] Similarly, the collateral attack in *Walker* would not be permitted, presumably, as a matter of fairness, outweighing the dictates of the Federal Rules of Evidence. But we need not decide whether Rule 410 stands as a bar to the admission of a nolo plea when a defendant levels a collateral attack on his prior conviction.

We need not decide that question because even Appellees concede that Sharif's claim of excessive force does not amount to a collateral attack on his aggravated assault conviction. They further concede that he did not admit any "facts which would indicate no civil liability on the part of" the corrections officers. *Walker*, 854 F.2d at 143. Indeed, we held in *Nelson v. Jashurek*, that *Heck* does not bar an excessive force claim because the claim can stand without

---

[5] District courts in our Circuit have relied upon *Heck* and *Walker* in tandem for the proposition that nolo contendere pleas, and the resulting convictions, bar pleaders from bringing 42 U.S.C. § 1983 claims in certain instances. *See Domitrovich*, 2010 WL 3489137, at *7-8 (*Heck* bars § 1983 false arrest and malicious prosecution claims because they would necessarily implicate the convictions, but an excessive force claim is not barred) (internal quotation marks omitted); *Douglas*, 2002 WL 31050863, at *8 (§ 1983 excessive force claim barred because *Walker* found to be "instructive and persuasive" and *Heck* controlling).

13

challenging any element of the conviction. 109 F.3d 142, 145-46 (3d Cir. 1997) ("[T]here undoubtedly could be substantial force which is objectively reasonable and substantial force which is excessive and unreasonable.") (internal quotation marks omitted); *see also Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) (plaintiff's § 1983 claim predicated on excessive force during his arrest is not barred by his nolo contendere plea to the offense for which he was arrested). Regardless of whether he engaged in assaultive conduct, Sharif remains free to contend that the reaction of the corrections officers was such that it constituted excessive force in comparison to the threat he posed. Thus, *Walker* is distinguishable from this case.

District courts within the Third Circuit that have chosen to consider or admit past nolo pleas, have done so largely on the basis of collateral estoppel principles discussed in *Heck*. As explained above, those principles are not applicable in this case, particularly given our holding in *Nelson* that *Heck* does not bar an excessive force claim because such a claim would not negate any element of the conviction. *Nelson*, 109 F.3d at 145-46. Given these considerations, we hold that Rule 410 barred the admission of Sharif's plea of nolo contendere.

The admission of Sharif's plea of nolo contendere was not harmless error. *See Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994) ("In reviewing evidentiary rulings, if we find nonconstitutional error in a civil suit, such error is harmless only 'if it is highly probable that the error did not affect the outcome of the case.'") (quoting *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 53 (3d Cir. 1989)). First and foremost, the District Court clearly ruled that the nolo plea should be admitted, and used by the jury, to assess

14

Sharif's credibility because his trial statement was inconsistent with his previous nolo plea. (J.A. 223, 606.) But this is incorrect. Indeed, a significant basis for prohibiting the evidence of the plea is the fear that it could be improperly viewed as an admission, and, unfortunately, that is how the District Court viewed it. This was reversible error.

In *Adedoyin*, which was controlling authority at the time of the District Court decision, we unmistakably held that, with respect to a criminal charge, a nolo plea does not admit underlying facts or guilt. 369 F.3d at 344 ("[A] plea of nolo contendere is not an admission of guilt and thus the fact that a defendant made such a plea cannot be used to demonstrate that he was guilty of the crime in question."); *see also Poellnitz*, 372 F.3d at 566 ("While a nolo plea is indisputably tantamount to a conviction, it is not necessarily tantamount to an admission of factual guilt."). Consequently, Sharif's claim that he did nothing wrong was not inconsistent with his previous plea of nolo contendere, and, thus, would not be relevant in assessing his character for truthfulness.

Moreover, insofar as it went to credibility, the Appellees' line of questioning was very damaging. Sharif was the only witness who testified on his behalf. His credibility was of the utmost importance to his case. By admitting his prior nolo plea, in violation of Rule 410, the District Court allowed Appellees to severely undermine Sharif's credibility. This damage was particularly acute given the method by which counsel strategically used the nolo plea to make Sharif appear untruthful as to the incident at issue.[6]

---

[6] As quoted *supra,* Appellees' counsel closed with the following statement: "[Y]et when he had an opportunity in

As Sharif points out, "[Appellees] argued that Mr. Sharif's statements in this case should not be believed because they were contrary to his decision to plead nolo in his criminal case." Appellant's Reply Br. at 3. For these reasons, we cannot say that the error did not affect the outcome of the case.

Finally, Appellees urge that it would be unfair to exclude Sharif's nolo plea. Appellees' Br. at 20 ("To ignore his nolo contendere plea and attempt to keep from the jury that he, in a previous legal proceeding, and under oath, took a contrary position, would be inconsistent and dishonest on the part of the Plaintiff."). But this argument regarding inconsistency demonstrates how Appellees misconstrue the very meaning of a nolo plea and one of the purposes of excluding such pleas from evidence. A nolo plea reflects a prosecutorial choice to permit a defendant to persist in not admitting the crime for the sake of obtaining the conviction. Thus, there is no inconsistency or "contrary position" at all.

### B. *Rule 609*: *Admissibility of the Conviction*

Sharif's second argument on appeal is that the District Court erred in admitting his conviction for aggravated assault in connection with the altercation in prison, which he contends should have been excluded pursuant to Rule 609. As noted *supra*, we, along with other courts of appeals, have held that Rule 410 does not bar the admission of a *conviction*

---

another court proceeding to contest that he didn't do what he was accused of doing, he didn't contest it . . . yet he comes in here in another court proceeding and takes a different position. That should speak volumes about his credibility." (J.A. at 577.)

resulting from a nolo plea, but rather prohibits only the admission of the plea itself. *See Adedoyin*, 369 F.3d at 344-45; *Olsen*, 189 F.3d at 58-62.

In *Olsen*, for example, the defendant was tried and convicted of first-degree murder. After five years in prison his conviction was overturned and he was released pending a new trial. *Olsen*, 189 F.3d at 55. Rather than go through a new trial, Olsen pled nolo contendere to the charge of manslaughter. *Id.* He was sentenced to time already served and released. Following his release, he brought a § 1983 claim against the city and two police officers, seeking damages for his imprisonment. *Id.* On appeal, Olsen argued that Rule 410 barred admission of not only his nolo plea, but also of the resulting conviction and sentence. The *Olsen* court held that Rule 410 clearly barred the admission of the plea itself, but declined to hold that the resulting conviction and sentence were barred under Rule 410.[7] *Id*. at 62.

While the nolo plea is not a *factual* admission of guilt, and is to be excluded in light of the policy reasons we have discussed, the conviction resulting from the nolo plea is a *legal* finding of guilt, and there are no similar policy reasons that would support its exclusion. *See Poellnitz*, 372 F.3d at 566 ("While a nolo plea is indisputably tantamount to a

---

[7] To illustrate the policy behind Rule 410's prohibition on admitting pleas of nolo contendere, the court in *Olsen* noted the distinction between nolo pleas and guilty pleas: "[A] nolo plea is not a factual admission that the pleader committed a crime." 189 F.3d at 59. Conversely, a "guilty plea is an admission of all the elements of a formal criminal charge." *Id*. at 60 (internal quotation marks omitted).

17

conviction, it is not necessarily tantamount to an admission of factual guilt." (citing *Adedoyin*, 369 F.3d. at 344)).  Indeed, it is well-established that Rule 410 does not apply to the conviction itself, which is admissible subject to the limitations of the other Rules of Evidence.  *See Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000) ("Rule 410 by its terms prohibits only evidence of pleas (including no contest pleas), insofar as pleas constitute statements or admissions.  Rule 609, by contrast, permits admission for impeachment purposes of evidence of *convictions*.") (emphasis in original); *United States v. Williams*, 642 F.2d 136, 139 (5th Cir. 1981) ("[T]here is a distinct and meaningful difference between the evidentiary use of a plea to a criminal charge and a conviction of a criminal charge.").

Rule 609 governs when prior convictions can be admitted to attack a witness's character for truthfulness.  Rule 609 reads in pertinent part:

> (a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction: (1) for a crime that . . . was punishable by death or by imprisonment for more than one year, the evidence: (A) must be admitted, *subject to Rule 403*, in a civil case or in a criminal case in which the witness is not a defendant.

Fed. R. Evid. 609(a)(1)(A) (emphasis added).

Since Rule 609 is subject to Rule 403, courts must consider whether the probative value of a prior conviction is substantially outweighed by the prejudicial effect of admitting

18

the conviction. *See* Fed. R. Evid. 403.[8] In doing so, we have directed that four factors should be weighed against the potential for prejudice in admitting a conviction: (1) the nature of the conviction; (2) the time elapsed since the conviction; (3) the importance of the witness's testimony to the case; and (4) the importance of credibility to the claim at hand. *United States v. Greenidge*, 495 F.3d 85, 97 (3d Cir. 2007) (citing *Gov't of the Virgin Islands v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982)).

We review a district court's application of a particular rule of evidence for abuse of discretion. *Balter*, 91 F.3d at 437. In denying Sharif's motion in limine and admitting his four assault convictions, including the 2009 conviction underlying his § 1983 claim that is the focus of his appeal, the District Court failed to conduct the required Rule 403 analysis. While that might normally prevent us from being able to review the Court's exercise of discretion, here, we can easily conclude from our evaluation of the four *Greenidge* factors that the admission of the 2009 conviction was not a proper exercise of discretion.

Regarding the nature of the conviction, in pre-trial proceedings Sharif contended that, while his false reporting

---

[8] Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

19

conviction[9] was probative, the probative value of his other convictions – all for assault – was minimal. *See* Mot. In Limine To Exclude Certain Irrelevant And/Or Prejudicial Evidence at 5. At trial, without explanation or mention of Rules 609 or 403, the District Court permitted all four of his assault convictions to be introduced for impeachment purposes and gave a limiting instruction as to the jury's consideration of them:

> You[, the jury,] have also heard that [Sharif] had been convicted of various crimes, and the only purpose for the admission of those crimes was as they affect his credibility. You may wish to consider those convictions as you weigh his credibility as a witness.
>
> One of those convictions involved the assault and battery that was testified to at the beginning of this case. That evidence may be considered by you in determining credibility. If you think that it does that is your decision.

(J.A. 605-06.)

On appeal, Sharif focuses specifically on the admission of his March 2009 assault conviction as error. Because the District Court allowed all three of his prior assault convictions to be admitted, we agree that the additional probative value of the March 2009 conviction regarding Sharif's truthfulness was minimal, if not nil.

---

[9] This specific conviction was under 18 Pa. Cons. Stat. § 4914.

Moreover, often, crimes of violence are less probative of honesty than are crimes involving deceit or fraud.[10]

This does not mean that convictions for acts of violence should be excluded, but it does require a district court to be diligent in considering the nature of the conviction and its relationship to the issues at trial, and in explaining its reasons for admission under Rule 403. This is particularly true in a case where the nature of the conviction is so closely related to the issue at trial. Not only was the trial about violent conduct, Sharif's 2009 aggravated assault conviction was for the *very incident* at the center of his civil claim. It was not simply similar to the issue at hand, it *was* the issue at hand. Thus, the first factor, "nature of the conviction," weighs heavily in Sharif's favor.

Examining the probative value under the remaining three prongs of the *Greenidge* test yields a balance in Sharif's favor, and against the probative value of the 2009 assault conviction. This conclusion is bolstered by the District Court's decision to admit all three of Sharif's other prior assault convictions, thereby further lowering the probative value of the conviction for aggravated assault at the center of this dispute.

---

[10] As noted by the Court of Appeals for the District of Columbia in *Gordon v. United States,* "[i]n common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence . . . generally have little or no direct bearing on honesty and veracity." 383 F.2d 936, 940 (D.C. Cir. 1967).

The second *Greenidge* factor, time elapsed between the conviction and the defendant's testimony at trial, does not weigh in favor of either side. When a prior conviction is not "remote in time" from the time of trial, it is more relevant to the case at hand than when it is an older conviction. *Greenidge*, 495 F.3d at 96; *see also* Fed. R. Evid. 609(b) (limit on using prior convictions that are more than 10 years old). For example, compare *United States v. Causey*, 9 F.3d 1341, 1344 (7th Cir. 1993) (conviction within the last six months was highly probative) with *United States v. Paige*, 464 F. Supp. 99, 100 (E.D. Pa. 1978) (eight year old conviction was deemed to have diminished probative value). Mr. Sharif's three year old 2009 conviction was not so far remote in time as to be irrelevant.

The final two *Greenidge* factors, the importance of the witness's testimony and the importance of credibility to the claim at hand, overlap. Sharif's testimony was very important as he was his only witness, and for that very reason, his credibility was also crucial to his claim. Sharif concedes that his credibility was "paramount to his case" as he was the only person to testify on his behalf about the events that led to this suit. Appellant's Br. at 24. In assessing all of these factors we cannot help but conclude that the probative value of Sharif's 2009 assault conviction was minimal. Even though his credibility was the key factor in the case, this fourth assault conviction added little on top of the three the jury were already made aware of.

Balancing the limited probative value against the potential for prejudice, we conclude that the 2009 assault conviction should not have been admitted. The primary concern regarding prejudice is that the jury may believe that

22

the defendant has a propensity towards acting in conformity with a prior bad act. *See Gordon v. United States,* 383 F.2d 936, 940 (D.C. Cir. 1967) ("[T]here is inevitable pressure on lay jurors to believe that if he did it before he probably did it this time."). Accordingly, we ask whether the admission of this conviction "ha[d] the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired." *Tabron v. Grace*, 898 F. Supp. 293, 296 (M.D. Pa. 1995). The fact that the 2009 conviction stems from the same incident at issue here makes this type of prejudice a particular danger, and given its limited probative value, the balance clearly favors not admitting the conviction pursuant to Rule 403.

In some situations, a limiting instruction, such as that given by the District Court, can minimize the prejudice. Here, however, we cannot imagine the jury being able to compartmentalize the most recent assault conviction – already having evidence of the other three – as relevant *only* to Sharif's character for truthfulness. Such mental gymnastics may well be beyond the ability of the common man, and may be more confusing than helpful to the jury in light of the circumstances, as Sharif urges. Appellant's Br. at 25. Jurors would be left wondering what the assault that relates to this § 1983 action has to do with honesty.

Sharif's credibility was sufficiently suspect given the falsification conviction, the three other assault convictions, and his status as a prisoner. *See Tabron*, 898 F. Supp. at 296 ("[T]he mere fact of incarceration in a state institution . . . is a significant tool for undermining the credibility of the witness."). Thus, the probative value of any conviction is diminished by virtue of the fact that the witness's credibility is already tarnished. The admission of the 2009 assault

23

conviction added nothing to the notion that Sharif's credibility was suspect. But it put the proverbial nail in the coffin as to the merits of his substantive claims in a way that we will not sanction. Accordingly, we hold that in the new trial of Sharif's case, the evidence of his 2009 assault conviction should not be permitted.

As with the admission of the nolo plea itself, the admission of the conviction was not harmless error. As we said previously, Sharif's testimony was critical to his claim. It was his account against the accounts of those accused of the wrongdoing. The other convictions that were admitted, along with the fact that Sharif was incarcerated, already diminished his credibility. Adding this additional conviction did not serve any purpose beyond making it nearly impossible for any juror to believe Sharif's version of events. Thus, we cannot say that the admission of this conviction did not affect the outcome of the trial.

## C. *Punitive Damages Claim*

Insofar as we will vacate the judgment of the District Court and remand this case for a new trial, we find it unnecessary to reach Sharif's argument that the District Court improperly granted judgment against Sharif on his punitive damages claim, based upon the insufficiency of the evidence under Federal Rule of Civil Procedure 50. We expect that Sharif will again pursue punitive damages in his new trial and put forth evidence to support it. The District Court will have the opportunity to assess the evidence presented at that trial; consequently, our ruling regarding what was presented at this trial, would be little more than an advisory opinion.

## IV. *Conclusion*

For the foregoing reasons, the District Court's judgment in favor of Appellees is vacated and the case is remanded for a new trial.